IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KELLY SCHULTZ,** *Plaintiff,* *v.* **REAL BROKER, LLC**, *Defendant.* | Case No. 1:25-cv-10634-VSB-SLC **CLASS ACTION COMPLAINT** **DEMAND FOR JURY TRIAL** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

This case addresses a disturbing trend whereby real estate brokerages train real estate agents to cold call consumers without consent violating the Telephone Consumer Protection Act ("TCPA"). Plaintiff Kelly Schultz ("Plaintiff Schultz" or "Schultz") brings this Class Action Complaint and Demand for Jury Trial against Defendant Real Broker, LLC ("Defendant" or "Real Broker") to stop the Defendant from violating the TCPA by training its agents to place unsolicited text messages to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Schultz, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**PARTIES**

1. Plaintiff Schultz is a resident of Zimmerman, Minnesota.

2. Defendant Real Broker is a Delaware registered corporation located in New York, NY. Defendant Real Broker conducts business throughout this District and throughout the US.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant is located in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is located in this District.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 4.7 billion robocalls were placed in November 2024 alone, at a rate of 157.6 million per day. www.robocallindex.com (last visited December 29, 2024).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

14. Defendant Real Broker is a publicly-traded real estate brokerage with over 24,000 agents and locations located throughout the US and parts of Canada.[3]

15. Defendant Real Broker advertises itself under the brand name Real.[4]

real

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/joinreal/about/
[4] https://onereal.widencollective.com/portals/tcbndxev/BrandElements

16. Real Broker's business model depends on agent productivity, from which it derives direct revenue through an 85/15 commission split until agents reach a cap, after which agents pay a fixed per-transaction fee.

17. To drive this productivity, Real Broker mandates and institutionalizes cold calling as a central sales tactic. This is not a decentralized or rogue practice; rather, Real Broker has implemented a corporate infrastructure that trains, equips, and incentivizes its agents to engage in outbound cold calling to consumers, including those who have not consented to be contacted.

18. Real Broker maintains a formal training platform known as 'Real Academy,' which offers courses, workshops, and mastermind groups focused on agent productivity. These training materials remain active and available to Real Broker agents as of the date of this Complaint.

19. Real Academy includes courses such as "Circle Prospecting," "Mastering Circle Prospecting," and "Conversations that Convert" that train agents to place unsolicited calls to consumers. Circle prospecting entails placing cold calls to consumers in a geographic area where a property has recently been sold or listed.

20. These training materials instruct agents on which dialing platforms to use, including Mojo, RedX, and Vulcan7, and how to source consumer phone numbers using Cole Realty Resource, which provides contact information for consumers in a given geographic area. Cole Realty Resource is provided directly within Real Academy course materials. The courses provide scripts and objection handlers for agents to use on these calls. One course instructs agents to "view 'no' as 'not yet" when speaking to consumers they call.

21. Real Academy also provides training on cold calling consumers with for-sale-by-owner properties and expired listings—consumers who have not provided consent to receive solicitation calls from real estate agents.

22. This training is endorsed at the highest levels of Real Broker. Sharran Srivatsaa served as President of Real Broker from December 2022 through June 2025, including the period when Plaintiff received the text messages at issue. During his tenure, Srivatsaa conducted a "2024 Business Plan Workshop" posted on Real Broker's official YouTube channel and available in Real Academy, in which he directed agents to the company's circle prospecting playbook, stating: "I give you the entire focus. I give you the scripts. I give you what your ISA should actually say... If somebody is calling on your behalf around the areas in which you have sold or in which you have buyers, it's really powerful because that's what's working right now."

23. Srivatsaa has also produced multiple videos teaching cold calling scripts that involve agents (and assistants making calls on their behaves) identifying as working "at Real".

24. Real Broker has ratified this conduct by promoting cold calling through official training channels; providing tools and scripts for unsolicited outreach; failing to enforce any compliance mechanism to curb unlawful calls; and continuing to receive and retain profits generated through cold-calling-based commissions.

25. This coordinated system resulted in messages like those received by Plaintiff Schultz: unsolicited text message solicitations from Real Broker agents with no prior relationship or consent.

26. The facts show that Real Broker does not merely tolerate illegal cold calling by its agents. It trains them to do it, provides the tools and scripts, and profits directly from their unlawful outreach.

27. Indeed, Real Broker maintains public facing websites in which it holds these same agents out to the public as its representatives.

28. For example, Real Broker maintains a dedicated agent profile page for Grant Johnson on its official website at https://onereal.com/profile/grant-johnson. This profile page, hosted on Real Broker's domain and bearing Real Broker's logo and corporate branding, displays Grant Johnson's photograph, contact information, a "Get In Touch" button, and his Minnesota real estate license number and Wisconsin license number. By maintaining and publicly displaying this agent profile, Real Broker manifests to consumers and the public that Grant Johnson is one of its authorized real estate agents acting on its behalf.




[5]

[5] https://onereal.com/profile/grant-johnson

29. Consistent with that, Grant Johnson's own website at www.grantjohnson.com prominently displays Real Broker's logo and includes the copyright notice "©Real 2024 All Rights Reserved" in its footer. The Grant Johnson Group website operates under Real Broker's branding, further manifesting to consumers that the Grant Johnson Group acts as part of Real Broker.







30. Real Broker's training scripts and its President's public directives specifically instruct agents to identify themselves as being "with Real Broker" or "from Real" when placing cold calls and sending text messages to consumers. The text messages Plaintiff received—in which the sender identified as "The Grant Johnson Group from Real"—are consistent with and follow

these corporate directives. This scripted self-identification is not organic agent behavior but a corporate-directed practice traceable to Real Broker's own training materials and leadership.

31. Plaintiff received solicitation text messages from an individual identifying as being "from Real." Any reasonable consumer could confirm through Real Broker's own website that Grant Johnson is displayed as one of Real Broker's representatives. These manifestations by Real Broker to the public—not merely the agent's self-identification—created a reasonable belief that Grant Johnson and the Grant Johnson Group were authorized agents of Real Broker.

32. And other Real Broker agents send similar unsolicited texts identifying themselves as working "with Real Broker," as "Real agents," or "from Real," as in the text message Plaintiff received.

33. Real Broker is liable for its agents' conduct under principles of apparent authority, actual authority, and ratification.

34. In response to these text messages, Plaintiff Schultz brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF SCHULTZ'S ALLEGATIONS

35. Plaintiff Schultz is the sole owner and exclusive user of her cell phone number ending in 0357.

36. Plaintiff Schultz has owned her cell phone number for over 8 years.

37. Plaintiff Schultz registered her cell phone number on the DNC on March 25, 2017.

38. Plaintiff Schultz uses her cell phone number for personal use only as one would use a landline telephone number in a home.

39. Plaintiff Schultz uses her cell phone number primarily to communicate with friends and family. It is also used to schedule personal appointments and for other household needs.

40. Plaintiff Schultz pays for her cell phone plan. It is not reimbursed by a business.

41. Plaintiff Schultz has never had her cell phone number associated with a business.

42. This phone number is not used in any business or marketing materials.

43. Plaintiff Schultz has never listed her cell phone number publicly as a business contact number.

44. On December 21, 2024 at 9:08 AM, Plaintiff Schultz received an unsolicited text message to her cell phone from 651-478-2221:




45. The text message clearly states that it was sent by an agent from The Grant Johnson Group from Real.

46. As of September of 2024, The Grant Johnson Group is a part of Real Broker:

grant johnson
group

real

47. The text message is a solicitation for real estate services.

48. On December 22, 2024 at 9:21 AM, Plaintiff Schultz received a 2nd unsolicited text message to her cell phone from 651-478-2221:




49. On December 23, 2024 at 10:20 AM, Plaintiff Schultz received a 3rd unsolicited text message to her cell phone from 651-478-2221:




50. On December 26, 2024 at 8:27 AM, Plaintiff Schultz received a 4th unsolicited text message to her cell phone from 651-478-2221:




51. Based on the above, the intention in texting Plaintiff Schultz was for The Grant Johnson Group, on behalf of Real Broker, to solicit real estate services for which Real Broker would receive a commission.

52. Plaintiff Schultz was not looking to purchase or sell a property.

53. Plaintiff Schultz has never provided her cell phone number to The Johnson Group or any Real Broker real estate agent.

54. Plaintiff Schultz has never done business with Real Broker or consented to be contacted by them.

55. The unauthorized solicitation text messages that Plaintiff received from or on behalf of Defendant have harmed Plaintiff Schultz in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

56. Seeking redress for these injuries, Plaintiff Schultz, on behalf of herself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

57. Plaintiff Schultz brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) a Real Broker affiliated agent texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant texted Plaintiff.

58. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Schultz anticipates the need to amend the Class definition following appropriate discovery.

59. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

60. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant Real Broker or its agents placed multiple text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call and/or text message;

(b) whether the text messages constitute a violation of the TCPA;

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

61. **Adequate Representation**: Plaintiff Schultz will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Schultz has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Schultz and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Schultz nor her counsel have any interest adverse to the Class.

62. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Schultz. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Schultz and the Do Not Call Registry Class)**

63. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

64. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

65. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

66. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Schultz and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

67. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Schultz and the Do Not Call Registry Class received more than one text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

68. As a result of Defendant's conduct as alleged herein, Plaintiff Schultz and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

69. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Schultz requests a jury trial.

**KELLY SCHULTZ**, individually and on behalf of all others similarly situated,

DATED this 23rd day of March, 2026.

By: /s/ Stefan Coleman
Stefan Coleman
law@stefancoleman.com
COLEMAN PLLC
11 Broadway, Suite 615
New York, NY 10001
Telephone: (877) 333-9427

Avi R. Kaufman (FL Bar No. 84382)
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*